**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARLOS KELVIN MATOS-RAMIREZ,** | : | |
| ***Petitioner,*** | : | |
| | : | |
| v. | : | **CIVIL NO. 26-7307** |
| | : | |
| **J. L. JAMISON et al.,** | : | |
| ***Respondents.*** | : | |

**Scott, J.** **October 15, 2026**

**MEMORANDUM**

Petitioner, Carlos Kelvin Matos-Ramirez, brings this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. For the reasons given below, the Court grants the petition and orders Petitioner's immediate release from detention.

## I. Background

Petitioner is a native and citizen of the Dominican Republic who entered the United States without inspection via the southern border on or about December 29, 2022. ECF No. 1 at 6. Shortly after entering the country, officers of the Department of Homeland Security ("DHS") detained Petitioner and placed him in removal proceedings. *Id.* On December 30, 2022, DHS released Petitioner on parole pursuant to Section 212(d)(5) of the Immigration and Nationality Act ("INA"), to live in Pennsylvania with his family and community members. *Id.*; ECF No. 1-5. As a condition of his removal proceedings and initial release from immigration detention, Petitioner was required to attend periodic check-in appointments with ICE, which he has done. ECF No. 1 at 7.

After arriving in the United States, Petitioner met and married his wife, who is a United States citizen. *Id.* at 6. In 2025, Petitioner's wife filed an I-130 Petition for Alien Relative, which, upon approval, would make Petitioner eligible for a green card as the spouse of a United States citizen. *Id.* at 7; ECF No. 1-4. This application remains pending. Petitioner's wife has numerous serious health conditions requiring treatment, and Petitioner has provided constant assistance to her up until his most recent detention. ECF No. 1 at 6. Petitioner has also established community ties with his aunts and uncles who live in Pennsylvania, his wife's three sons (two of whom are active-duty U.S. Marines), and attendees of his local Catholic church. *Id.* Petitioner has no criminal record; he has never been arrested, charged with, or convicted of a crime in any country. *Id.*

On or around September 22, 2026, during a routine ICE check-in, DHS officials took Petitioner into custody without notice and detained him at the Philadelphia Federal Detention Center ("FDC"), where he remains. *Id.* at 7. Petitioner filed the instant habeas petition that same day. Petitioner argues that his detention violates the INA and his due process rights, and that the Government's decision to re-detain him absent materially changed circumstances since being granted parole amounts to an arbitrary and capricious policy recission that violates the Administrative Procedure Act and the *Accardi* doctrine. The Government responds by arguing that it properly exercised its discretion under § 1226(a) of the INA to re-detain Petitioner in the first instance, and that Petitioner must exhaust his administrative remedies before seeking relief in this Court.

## II. Legal Standard

28 U.S.C. § 2241 confers jurisdiction upon the federal courts to review the legality of immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Under § 2241, a petitioner

is entitled to relief if he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The burden is on the petitioner to show that his or her confinement is unlawful. *See Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

**III. Discussion**

**A. Petitioner Is Excused From Exhausting Administrative Remedies**

It is undisputed that Petitioner was detained under Section 236 of the INA, 8 U.S.C. § 1226. *See* Form I-286, Notice of Custody Determination, ECF No. 4-1 (Ex. A) (stating that Petitioner was detained "[p]ursuant to the authority contained in Section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations"). Section 1226(a) of the INA permits ICE to, pursuant to a warrant issued by the Attorney General, "arrest[] and detain[] [an alien] pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). This provision and its implementing regulations also provide a two-step administrative process by which an alien may request review of a custody determination: (1) the detained noncitizen may request a bond redetermination hearing before an immigration judge; and (2) the noncitizen may appeal the immigration judge's bond decision to the Board of Immigration Appeals ("BIA"). *Ubaid v. Jamison*, No. 26-cv-2681, 2026 WL 1346670, at *3 (E.D. Pa. May 14, 2026) (citing 8 C.F.R. § 236.1(d)). The Government contends that Petitioner must exhaust this process before proceeding with this action in this Court.

It is true that, "[i]n general, [a petitioner] must exhaust administrative remedies before proceeding on a habeas petition brought under § 2241." *Ubaid*, 2026 WL 1346670, at *3 (quoting *Pinet v. Holt*, 316 F. App'x 169, 171 (3d Cir. 2009) (per curiam)). However, because § 2241 contains "no [explicit] exhaustion requirement," *Callwood v. Enos*, 230. F.3d 627, 634 (3d Cir. 2000), exhaustion is a matter of courts' "sound judicial discretion." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). The Court may therefore excuse exhaustion where: (1) administrative

remedies would be futile, (2) the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or (3) the administrative procedure is clearly shown to be inadequate to prevent irreparable injury. *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988).

Exhaustion is excused here for two reasons. First, "a later bond hearing does not necessarily cure the alleged constitutional deprivation that preceded it." *Dos Reis v. McShane*, No. CV 26-3775, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026); *Hernandez v. Jamison*, No. 26-CV-7606, 2026 WL 3034460, at *2 (E.D. Pa. Oct. 9, 2026) (same); *Lopez-Abello v. Jamison*, No. 26-6752, 2026 WL 2981935, at *1 (E.D. Pa. Oct. 5, 2026) (same); *Medina v. Jamison*, No. CV 26-6800, 2026 WL 2742071, at *3 (E.D. Pa. Sept. 16, 2026) (same). Petitioner was detained at a routine ICE check-in, without notice or an opportunity to contest it, and alleges that this violated due process. A later bond hearing cannot cure the initial alleged deprivation of liberty. As such, this remedy would be futile.

Second, "the record calls into question whether administrative remedies are truly available to Petitioner." *Medina*, 2026 WL 2742071 at *4. Respondents obliquely state that "DHS is in the process of filing [a] request [for a bond hearing] with the immigration court, which will then trigger the immigration court to schedule Petitioner for a bond hearing." ECF No. 4 at 3. Respondents also, however, represent to the Court that Petitioner must be transferred out of this District to receive such a bond hearing. *Id.* at 4. They state (as they have in other similar cases) that FDC-Philadelphia, as part of its "agreement to house immigration detainees," does not facilitate bond hearings in any capacity. *Id.*; *see also, e.g.*, *Dos Reis*, 2026 WL 1746649 at *3 n.2. "In other words, the Government's own detention arrangements" would apparently prevent Petitioner from attending a bond hearing once it is scheduled. *Id.* at *3. Under these circumstances, the Court

finds Petitioner's administrative remedies unavailable. Therefore, he is excused from exhausting them.

**B. Petitioner's Detention Violates Due Process**

Count II of the petition argues that Petitioner's detention violates procedural due process. The Due Process Clause of the Fifth Amendment prevents the government from depriving any person of "life, liberty, or property without due process of law." The Due Process Clause "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine whether an individual has been deprived of due process, courts weigh (1) the private interest at stake; (2) the risk of the erroneous deprivation of that interest and the probable value of procedural safeguards; and (3) the government's interest, including the administrative burden of providing those procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 331-32 (3d Cir. 2021) (applying *Mathews* to civil immigration detention context).

Here, the first *Mathews* factor weighs in favor of Petitioner, as he has a substantial private interest in his continued liberty from detention. Freedom from physical confinement "lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. This interest is even stronger given that Petitioner was previously detained and released on conditional parole. *See, e.g.*, *Medina v. Jamison*, No. CV 26-6800, 2026 WL 2742071, at *5 (E.D. Pa. Sept. 16, 2026) ("[Petitioner] has a substantial liberty interest in his continued freedom from detention" after "it released him on humanitarian parole in 2022, and it has repeatedly elected not to detain Petitioner until now despite consistent and regular contact with him.").

Regarding the second *Mathews* factor, the risk of an erroneous deprivation of Petitioner's liberty interest is high because he received no notice or process prior to his detention, which

occurred during a regular ICE check-in for which he voluntarily appeared. Moreover, the burden of providing additional procedural safeguards, such as a pre-deprivation hearing or evaluation, would be low; presumably, the government conducted such an evaluation in 2022 without issue and decided that Petitioner was fit for release on parole. There is nothing to indicate that circumstances have changed such that Petitioner's liberty interest has weakened. Thus, this *Mathews* factor also weighs in Petitioner's favor.

As for the third *Mathews* factor, the Court recognizes that the Government has a legitimate interest in immigration enforcement by detaining noncitizens who are at risk of absconding or who present a danger to the community. *See Dzehtisarou v. Mullin*, No. CV 26-5060, 2026 WL 2211392, at *6 (E.D. Pa. July 31, 2026) (citing *Zadvydas*, 553 U.S. at 690). Here, however, the Government previously determined that Petitioner was neither, and did not conduct an individualized determination of flight risk or dangerousness prior to the re-detention at issue here. The Government asserts that it conducted an "individualized review of Petitioner's case, including accurately determining that he was present in the United States without lawful status as reflected in the Form I-213." ECF No. 4 at 9. However, the Court is skeptical that a determination on the Form I-213 that Petitioner is present without lawful status, standing alone, could amount to an "individualized review" sufficient to satisfy the requirements of due process and of INA § 1226. Indeed, courts within this District have held that "[r]eliance on status alone amounts to 'a per se determination' that "comports not with 1226(a), but with [the Government's] desired policy of detention.'" *Dos Reis*, 2026 WL 1746649, at *4 (citing *Pastrana-Beltran v. Mullin*, No. 26-cv-2657, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026)); *Baez v. Blanche*, No. CV 26-7654, 2026 WL 3060698, at *1 (E.D. Pa. Oct. 13, 2026) (same); *Torres Guevara v. Warden of Fed. Det. Ctr. Philadelphia*, No. CV 26-7077, 2026 WL 2838542, at *2 (E.D. Pa. Sept. 22, 2026) (same),

*Medina*, 2026 WL 2742071, at *5 (same); *see also Lopez-Abello v. Jamison*, No. CV 26-6752, 2026 WL 2981935, at *2 (E.D. Pa. Oct. 5, 2026) (holding that "detention without an individualized custody review violates due process, and that a determination of an individual's presence in the United States without lawful status is insufficient to meet that threshold.").

Under these circumstances—where Petitioner was previously deemed fit for parole[1] in 2022; has since developed ties with relatives, his U.S. citizen spouse, and his church community; has a pending meritorious marriage-based petition for lawful status; has no criminal record; and has voluntarily complied with all conditions of his parole—the Court finds no evidence that Petitioner is a flight risk or a danger to the community. *Cf. Salinas Jaigua v. Jamison*, No. CV 25-7115, 2025 WL 3757076, at *3 (E.D. Pa. Dec. 29, 2025) ("[The petitioner] had previously entered the United States, was granted parole, and resided here for over three years. This Court raises the question, what has [he] done since his last check-in appointment before [the day of his arrest] to justify his detention without a hearing? Based on the facts as stated and, more importantly, conceded by the Respondents, he has done nothing."). Thus, the third *Mathews* factor weighs in Petitioner's favor.

Accordingly, Petitioner's detention violates his right to procedural due process, and the appropriate remedy is release.[2]

---

[1] The Court notes that Petitioner was paroled pursuant to INA § 212(d)(5), 28 U.S.C. § 1182(d)(5), which states in part that DHS may, in its discretion, parole a detained noncitizen "on a case-by-case basis for urgent humanitarian reasons or significant public benefit . . . but . . . when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled." 28 U.S.C. § 1182(d)(5)(A). Although this specific issue was not briefed by the parties, the Court is skeptical that circumstances have changed since Petitioner's initial release such that the purposes of Petitioner's parole have been served. *Cf. Beridze v. Jamison*, No. CV 26-1611, 2026 WL 766171, at *6 (E.D. Pa. Mar. 18, 2026) ("There is nothing on the record before the Court that suggests any 'urgent humanitarian reasons or significant public benefit' that existed at the time of Beridze's parole no longer exist such that the purpose of parole has been served.").

[2] Because Petitioner is entitled to relief based on violation of procedural due process, the Court declines to reach Petitioner's claims under substantive due process, the Administrative Procedure Act, or the *Accardi* doctrine. The Court also takes note of Petitioner's Notice of Supplemental Authority (ECF No. 6) discussing recent rulings involving similarly situated petitioners detained pursuant to § 1226(a). The judges in those cases ordered release where the

## IV. Conclusion

For these reasons, the Court will grant Petitioner's habeas petition and order his immediate release. An appropriate Order follows.

Government made no individualized determination before detention, detained the petitioner without notice at a routine ICE check-in, or both. The Court finds the reasoning of those cases applicable here.